UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

| | | |
|---|---|---|
| UNITED STATES | * | |
| | | |
| v. | * | Criminal No. 06-248 (JDB) |
| | | |
| JUAN DEL CID MORALES | * | |

RESPONSE TO MOTION FOR NEW TRIAL

      Comes the United States through Kenneth A. Blanco, Chief, Narcotic and Dangerous Drug Section, Department of Justice, and Paul W. Laymon, Kia Habisreitinger, and Brian Tomney, Trial Attorneys, Narcotic and Dangerous Drug Section, and responds to the motion for new trial.

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S OMINBUS MOTION FOR JUDGMENT OF ACQUITTAL, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

      On November 9, 2007, Defendant Juan Daniel Del Cid Morales was found guilty after a one week jury trial of conspiring to import five kilograms or more of cocaine into the United States and conspiring to manufacture and distribute five kilograms or more of cocaine intending and knowing that the cocaine would be unlawfully imported into the United States. Del Cid Morales has filed an omnibus Motion For Judgment of Acquittal, or in the alternative, a Motion

For A New Trial. For all of the reasons set forth herein, these post-conviction motions should be summarily denied.

## EVIDENCE INTRODUCED AT TRIAL

As this Court is aware, Del Cid Morales was arrested in El Salvador in September 2006, following a lengthy investigation by the U.S. Drug Enforcement Administration (DEA). The investigation began with several DEA informants being inserted into a drug trafficking organization operating out of Guatemala. The DEA became aware of a man named Jorge Bardales Bourdet who told one of the informants that he could facilitate cocaine movements to the United States through the country of Guatemala. As a result, a meeting was held in June 2006 in Panama. This meeting consisted of Bardales-Bourdet, Antonio Chui-Serrano, and three DEA informants. One informant, Augustine Cortez, represented himself to be a Colombian cocaine trafficker.

At this meeting, Bardales told Cortez that he had the ability to move cocaine through Guatemala so long as the minimum cocaine load was 1000 kilograms. Bardales and Serrano discussed potential prices for their services and explained that they could arrange for the cocaine to be imported into Guatemala and stashed at a warehouse. They also discussed the transportation of the cocaine to the border with Mexico, and on to the United States. Serrano told Cortez that his boss in Guatemala was named Erik Constanza. Within hours after this meeting, Erik Constanza Bran called Cortez to let him know that he was aware of the meeting, was in fact Serrano's boss, and looked forward to dealing with the informant. After at least two more calls between Bran and Cortez, another meeting in El Salvador was arranged.

In July 2006, the informant Cortez, still posing as a Colombian cocaine trafficker, met in

El Salvador with Bardales, Bran, and codefendants Juan Del Cid Morales and Alvaro Mejia. Morales and Mejia, who in reality were former police officials in Guatemala, posed as current high ranking police officials. Cortez specifically stated that he proposed to move a container of 1300 kilograms from Colombia to Panama and in to Guatemala, where the load would be stashed until it could be taken to the border with Mexico and on to the United States. Bardales and Bran agreed to provide the "infrastructure" for the movement of the cocaine, which included a place to stash the cocaine, while Del Cid Morales and Mejia were to provide "safe passage" of the cocaine to the Mexican border. Mejia spoke at the meeting about DIPA, the newly created Guatemalan customs agency tasked with antinarcotics enforcement at the border, and Del Cid Morales spoke about avoiding entanglement with the DEA. Del Cid Morales accepted $10,000 from the informant.

In August 2006, the informant met again in El Salvador with Bran, Del Cid Morales, and Mejia. Bardales was not present for this meeting, apparently because he had been injured in an automobile accident in Guatemala. At this meeting (and in telephone calls leading up to this meeting), Bran spoke about how he could take the place of Bardales and that the plan would go on. Bran pledged that he, Del Cid Morales, and Mejia were still willing and able to assist the informant with the container of cocaine. Bran drew a diagram showing how the cocaine could be hidden in a forty foot shipping container and discussed the price for setting up a front business.

In September 2006, the informant again met in El Salvador with Bran, Del Cid Morales, and Mejia. Bran had in his possession a CD which contained a document which in essence showed that Bran was proposing to hide the cocaine in a shipment of Christmas goods. All three were arrested at this meeting by police in El Salvador, who turned the three over to the custody of DEA. On the plane ride to the United States, after advice and waiver of his rights, Del Cid

Morales told DEA agents that he was a former police officer in Guatemala, that he believed the informant to be a Colombian drug trafficker, and that (in essence) he had agreed to help move a load of cocaine to the border with Mexico, knowing it was going to the United States.

**ARGUMENT**

I. **THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL MUST BE DENIED AS THERE IS A SUFFICIENT BASIS UPON WHICH A JURY COULD FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANTCOMMITTED THE CRIME FOR WHICH HE WAS CHARGED.**

The Court must deny a Motion for Judgment of Acquittal when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Poston*, 902 F.2d 90, 94 (D.C.Cir. 1990). The evidence in this case was more than sufficient for reasonable jurors to conclude beyond a reasonable doubt that a conspiracy to manufacture, distribute, and import cocaine existed, that the defendant was a member of that conspiracy, and that the defendant knew or intended that the cocaine was to be imported into the United States. The issues raised in the renewed Rule 29 motion do not provide any basis to support the granting of a motion for a judgment of acquittal.

The standard for granting a motion for judgment of acquittal is even more stringent than for granting a motion for a new trial. It requires the Court to affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arrington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and

draw justifiable inferences of fact." *United States v. Dykes,* 406 F.3d 717, 721 (D.C. Cir. 2005) (internal quotations and citation omitted); *United States v. Valdes*, 437 F.3d 1276, 1278 (D.C. Cir. 2006)(court views all evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences); *see also United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983).

Courts accord great deference to juries and allow the jury's determination to stand even when the court may have reached a different conclusion. "When a reasonable minds might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jury to make." *United States v. Heron,* 567 F.2d 510, 514 (D.C. Cir. 1977). The trial court must give "full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inference of fact." *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985). Thus, the jury's determination will stand unless no reasonable juror could have found a defendant guilty beyond a reasonable doubt. *United States v. Singleton*,702 F.2d 1159, 1163 (D.C. Cir. 1983) (In ruling on a motion for judgment of acquittal, the trial court must determine whether "a reasonable jury *must necessarily* entertain reasonable doubt on the evidence presented). In other words, if the evidence reasonably permits a verdict of guilt, the decision is for the jury to make. *United States v. Sutton,* 801 F.2d 1346, 1358 (D.C. Cir. 1986).

A. **A Reasonable Jury Could Conclude From the Government's Evidence that there was a Single Conspiracy and thus There Was No Variance from the Indictment.**

The defendant claims that the government's evidence at trial established that Del Cid Morales and his co-defendant's were involved in multiple conspiracies, not the single conspiracy alleged in the indictment. Based on the testimony and evidence offered at trial, this claim must fail.

In this case, the government charged Del Cid Morales, Erik Constanza Bran, Alvaro Mejia, Antonio Chui Serrano, and Jorge Bardales with participating from April 2006 to September 27, 2006 in a single conspiracy, to import cocaine into the United States or to manufacture and distribute cocaine, knowing such cocaine would be imported into the United States.

"Whether activities constitute a single or multiple conspiracies depends on several factors, including whether participants shared a common goal, interdependence between alleged participants, and, though less significant, overlap among alleged participants." *United States v. Hemphill*, 2008 WL 341297 *10 (D.C. Cir. 2008)(citations omitted). The most important of these factors is whether the coconspirators share a common goal, such as the possession and distribution of narcotics for profit." *United States v. Tarantino*, 846 F.2d 1384, 1393 (D.C. Cir. 1988); *See also U.S. v. Medina*, 944 F.2d 60, 64 (2d Cir. 1991) ("To prove the existence of a single conspiracy, the government must demonstrate that the alleged conspirators agreed on a common unlawful goal"). Indeed, "[o]verlap requires only that the main conspirators work with all the participants." *Id*. Moreover, a conspiracies purpose should not be defined in terms too narrow or specific. *Id*. (citations omitted)(alterations in original).

The common goal of the conspiracy, from the beginning of the conspiracy in June 2006 and throughout the conspiracy, was the movement of more than 1000 kilograms of cocaine into the country of Guatemala, and its safe transit to the Mexican border, from where it would be transported to the United States.

This common goal was evidenced by (1) the videotaped evidence of the June Panama meeting where Bardales stated he could assist the informant in moving cocaine into Guatemala and to the Mexican border, but that the plan had to be be for more than 1000 kilograms, (2) the videotaped evidence of the July El Salvador meeting where the informant informed Morales,

Bardales, Bran, and Mejia that he had 1300 kilograms of cocaine that he wished to send to the United States through Guatemala; (3) the numerous recorded phone calls between the informant and Bran, often spoken in code, relating to the preparation needed to move the cocaine through a Guatemalan port; (4) videotaped evidence of the second El Salvador meeting with Morales, Bran, and Mejia in August where Bran turned over business paperwork and drew a diagram showing where the cocaine would be hidden within the container; and (5) evidence of a third trip to El Salvador in September by Morales, Bran, and Mejia where they were arrested while meeting with the informant. At this last meeting Morales accompanied Bran and Mejia with the intent to obtain money from the informant to establish the "front company." Bardales' apparent incapacitation and presumed death did not change the common goal of this conspiracy.

Interdependence of Morales and his co-conspirators is exhibited by the roles that each had in the agreement. At a minimum, Bran's role was to establish the "front company", whereas Morales and Mejia were to provide security for the cocaine while it was in and transited Guatemala. Morales' role, like Mejia's, was a continuation of the discussions held in June in Panama. Each participant had roles, which if not fulfilled, could not culminate in a successful cocaine transaction.

Arguably, Bardales and later Bran played more of a leadership role in the conspiracy. From the July meeting on, Bran appeared to fulfill the role as manager and organizer. There was significant overlap, in what was a relatively small conspiracy, of Bardales and Bran with all of the conspirators. However, the conspirators in this single conspiracy worked with all the participants. Only Chiu Serrano appeared to fall out after the June meeting.

Some courts have resorted to the "hub" and "wheel" analysis in determining whether there was a single conspiracy or multiple conspiracies. However, this analysis is not one particularly apt for drug conspiracies. *Tarintino*, 846 F.2d at 1392. More typical is the chain analysis, but while this

may be a helpful metaphor it does not end a court's inquiry. *Id*. "A single conspiracy is proven if the evidence establishes that each conspirator had the specific intent to further the common unlawful objective." *Id*.

The evidence in this case shows that Morales had the specific intent to further the common unlawful objective. Morales traveled from Guatemala to El Salvador and was present at three meetings where discussions of the agreement occurred. At the first meeting, Morales received $10,000 from the informant to further the planned activity. Morales is also seen and heard discussing the DEA's involvement in Guatemala with the informant just minutes after leaving the meeting where he received $10,000. And in his statement to the agents on the flight to the United States, Morales essentially confessed to his involvement in the offense.

Even if the government had failed to establish this interconnectedness which demonstrates a single conspiracy, in order to reverse his conviction, the defendant must show that any variance "substantially prejudiced" him through "spillover prejudice." *United States v. Gavaria*, 116 F.3d at 1533. Substantial prejudice occurs when multiple defendants are charged with a large and complex conspiracy and the defendant might be found guilty based on evidence properly admitted only against someone else. *United States v. Stewart*, 104 F.3d 1377, 1382 (D.C. Cir. 1997). The record, in the present case, does not suggest such spillover. First, the risk of spillover prejudice is less likely the fewer the defendants. *Gavaria*, 116 F.3d at 1533 (no risk of prejudice with four defensnts); *United States v. Anderson*, 39 F.3d at 348 (no risk of prejudice with ten charged defendants). Here, like *Gavaria*, the defendant was indicted with only four defendants. In addition, the government introduced two videotape recordings of meetings with Morales, and put on evidence of his attendance at a third meeting. The jury, therefore, had "no need to look beyond the defendant's

own words [and actions] in order to convict." *Gavaria*, 116 F.3d at 1533 (quoting *Anderson*, 39 F.3d at 348).

II.     **THE DEFENDANT'S REQUEST FOR A NEW TRIAL MUST BE DENIED BECAUSE HE HAS FAILED TO DEMONSTRATE THAT IT IS IN THE INTEREST OF JUSTICE AND THAT THE VERDICT RENDERED BY THE JURY REPRESENTS A MISCARRIAGE OF JUSTICE**

Rule 33 of the Federal Rule of Criminal Procedure provides that a court may grant a new trial only if "the interests of justice so require." The remedy of granting a new trial, however, is to be used sparingly and only when there would be a miscarriage of justice because the evidence preponderates heavily against the verdict. *United States v. Walker*, 899 F.Supp. 14, 15 (D.D.C. 1995), aff'd, 99 F.3d 439 (D.C. Cir. 1996). *See also United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990). "This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict." *United States v. Edmunds*, 765 F.Supp. 1112, 1118 (D.D.C. 1991); *United States v. Reese*, 561 F.2d 894, 902 (D.C. Cir. 1977)

Furthermore, the defendant bears the burden of showing that a new trial would be in the "interest of justice." *Id*. Furthermore, even if the defendant demonstrates that an error occurred, a new trial is not warranted unless the defendant shows that it so influenced the jury that a substantial right of the defendant was affected. *See* Fed.R.Crim.P. 52(a) (describing harmless error provision that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded").

Morales claims that the verdict should be set aside for essentially four reasons. First, he claims it was error to introduce the June 20, 2006 video into evidence. Second, Morales argues that statements of the "Spaniard" were admitted in violation of the Confrontation Clause. Third, Morales argues that he was improperly denied "impeachment material" on "Spaniard" and invokes the rubric

of *Jenks/Giglio/Brady*. Finally, Morales argues for a new trial based upon the weight of the evidence.

Though Del Cid Morales was not present at the Panama meeting in June 2006, Bardales and Chiu Serrano were present. In particular, Bardales had lengthy discussions with the informant about how Bardales and his associates could assist the informant in moving a load of at least 1000 kilograms of cocaine into Guatemala. Bardales continued to participate in the conspiracy, joining Morales and others at the meeting with the informant in July 2006. The general rule is that a conspirator adopts the previous acts and declarations of his fellow coconspirators when the previous acts and declarations tend to show the nature of and object of the conspiracy. See, for example, *United States v. Coe,* 718 F.2d 830, 839 (7th Cir. 1984) and the cases cited for this proposition by the government in Response Concerning Crawford, Informant Information, and Evidence Predating Entry Into Conspiracy, Document 129, filed October 31, 2007. The district court correctly found that Morales adopted the statements made at the Panama meeting because the statements showed the nature and object of the ongoing conspiracy.

A second informant, referred to as "The Spaniard" and "Iberia", was present at the June and July meetings. He participated in the conversation with Bardales and the others, and his questions and comments were admitted to provide context, and were not admitted for the truth of the matter asserted therein. *Crawford v. Washington,* 541 U.S. 36 (2004), bars admission of out of court statements by a nontestifying witness which are admitted for the truth, but *Crawford* specifically held that statements in furtherance of a conspiracy do not violate the Confrontation Clause. Following *Crawford,* the circuit courts have generally held that the Confrontation Clause does not bar the use of statements introduced solely to place a defendant's admissions into context. See, for example, *United States v. Walter,* 434 F.3d 30, 333-35 (1st Cir. 2006) and other cases cited by the government

in its response in Document 129, filed October 31, 2007. The district court correctly followed this precedent.

The court correctly decided that the government would not be required to disclose impeachment material related to "Iberia", as the general rule is that the government does not have to provide *Giglio* material for a nontestifying informant. "Iberia" did not testify at the trial, and in fact is presumed to be dead, so that the defense was not entitled to attack his credibility. See, for example, *United States v. Green,* 178 f.3d 1099, 1109 (10th Cir. 1999), and other cases cited by the government in its response at Document 129, filed October 31, 2007.

Finally, the weight of the evidence clearly supported Del Cid Morales' conviction. Any rational juror could reach but one conclusion in this matter, that the defendant was guilty beyond a reasonable doubt.

**CONCLUSION**

For the reasons stated, the United States moves the court to deny the motion for new trial.

Respectfully submitted,

\_\_\_\_\_/s/_____

Paul Laymon
Brian Tomney
Trial Attorneys
Narcotic and Dangerous Drug Section
Department of Justice
1400 New York Ave NW
Washington, DC 20005
202-725-7741
paul.laymon@usdoj.gov

CERTIFICATE OF SERVICE

I certify that a copy of this response was sent via e-mail to defense counsel on March 12, 2007.

                                          __/s/_____
                                          Paul W. Laymon