UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. Case No.: 06-248 (4) (JDB) |
| JUAN DANIEL DEL CID MORALES | |

**DEFENDANT JUAN DEL CID MORALES'**
**MEMORANDUM IN AID OF SENTENCING**

**COMES NOW** Defendant Juan del Cid Morales (hereinafter referred to as "Mr. Morales"), and respectfully submits this Memorandum In Aid of Sentencing.

**Background**

Mr. Morales stands convicted of one count of Conspiracy to Import Five Kilograms or More of Cocaine into the United States, and Conspiracy to Manufacture and Distribute Five Kilograms or More of Cocaine, Knowing and Intending That it Would be Imported Into the United States, in violation of 21 U.S.C. §§ 963, 952, 959, and 960, and Aiding and Abetting, in violation of 18 U.S.C. §2.

**Concise Sentencing Argument**

Mr. Morales respectfully prays that his sentence reflect his jury's factual finding and not expand his relevant conduct as related to drug amounts. Additionally, Mr. Morales also submits that the evidence at trial reflected a lower level of responsibility than his codefendants and, therefore, that he should be classified as a minor participant. He also respectfully asks the Court to take into consideration his age and medical condition as factors in mitigation. A sentence of 10-12 years is requested.

**Relevant Conduct – 5 Kilograms vs. 1,300 Kilograms**

Only a jury should determine the amount of drugs to attribute to Mr. Morales; based upon the jury verdict, that level is five or more kilograms of cocaine. The use of judicial fact-finding violates his Sixth Amendment jury trial guarantees. Under the Sixth Amendment and Supreme Court precedents since 2000, a district court is not required to impose a guideline sentence stemming from facts beyond the guilty verdict and any valid admissions. *See Rita v. United States*, 551 U.S. ----, 127 S.Ct. 2456, 2466 (2007)("A nonbinding appellate presumption that a Guidelines sentence is reasonable does not *require* the sentencing judge to impose that sentence.") (emphasis in original); *Cunningham v. California*, 127 S. Ct. 856, 860 (2007)("placing sentence-elevating factfinding within the judge's province[ ]violates a defendant's right to trial by jury safeguarded by the Sixth Amendment. . . ."); *United States v. Booker*, 543 U.S. 220, 233 (2005); *Blakely v. Washington*, 542 U.S. 296, 304-05 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Use of conduct under a preponderance-of-evidence standard for purposes of sentencing also violates Mr. Morales' rights under the Due Process Clause of the Fifth Amendment, which requires proof beyond a reasonable doubt to protect against factual error when a person's liberty is at stake. *In re Winship*, 397 U.S. 358, 363-64 (1970); *see also Schriro v. Summerlin*, 542 U.S. 348 (2004) (despite lack of jury fact-finding, use of a reasonable doubt standard by judge assured that accuracy was not seriously diminished).

Because the jury found that Mr. Morales was accountable for only five kilograms of cocaine, his base offense level must only be increased pursuant to U.S.S.G. §1B1.3, Relevant Conduct. Although the law permits the Court to find Mr. Morales accountable for a greater amount of cocaine, it is the government's burden to convince the Court by a preponderance of the evidence. Mr. Morales contends that the quantity of cocaine for which he could be held

2

accountable must be determined pursuant to §1B1.3(a)(1)(B); i.e., as part of jointly undertaken activity.

It is important to note, however, that jointly undertaken activity is *not always the same as the principles of criminal liability*. *See* Application Note 1 to §1B1.3. Specifically, the conduct has to be reasonably foreseeable to the defendant and within the scope of his agreement to join the conspiracy in order to be attributable to him during the sentencing phase. *See United States v. Graham*, 317 F.3d 262 (D.C. Cir. 2003). In Mr. Morales' case, because of the international component of the case, the evidence also needs to show reasonable forseeability of an intent to import cocaine into the United States.

Yet, a defendant is not automatically held accountable for an amount of cocaine that he could have foreseen. The amount of cocaine attributable to him must have been *within the scope of his jointly undertaken activity, not simply foreseeable.* *See* Application Note 2 (Citing examples of the limitation of §1B1.3 in attributing conduct of codefendants to a co-conspirator.), Application Note 2.(c)(3) and (5). Mr. Morales asserts that calculation of drug-weight as relevant conduct is not reliable, not foreseeable and not established within the scope of the alleged conspiracy. Accordingly, for the purposes of sentencing calculation, only 5 kilograms of cocaine should be consideration and calculated.

## Minor Participation

The United States District Court for the District of Columbia citing *United States v. Caballero*, 936 F.2d 1292, 1299 (D.C. Cir. 1991) has stated:

> The D.C. Circuit has determined that in order for a defendant to qualify for a minor participant adjustment, the evidence available to the court at sentencing must, at a minimum, show (i) that the "relevant conduct" for which the defendant would, within the meaning of section 1B1.1(a)(1), be otherwise accountable involved more than one participant (as defined in section 3B1.1, comment. (n.1))

3

>and (ii) that the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s).

295 F. Supp. 2d 11, 21 (2003).  Based upon Mr. Morales' conduct in this enterprise, he is entitled to an adjustment for a mitigating role in accordance with U.S.S.G. §3B1.2.  At the very least, he should be granted a two-level adjustment as a minor participant in the drug conspiracy.  A minor participant is one who is less culpable than most other participants in the offense.

In Mr. Morales' case, two defendants organized, negotiated, engaged coconspirators and monitored the status of the conspiracy; neither of the defendants were Mr. Morales.  As aptly stated in this Court's decision rendered in response to Mr. Morales' post-trial motions:

>Each had a specific role to play, which was essential for the success of the scheme.  Bardales and Constanza Bran acted as the leaders and managers.  After Bardales' presumed death, Constanza Bran explained how the agreement would carry on and how he would take the place of Bardales.  Bardales' death, then, did nothing to alter the common goal to move and import 1000 kilograms of cocaine.  Constanza Bran also had the additional task of setting up a front business to cover the group's activities, and Del Cit Morales and Mejia, who were former police officials in Guatemala, were to provide security to ensnare the cocaine reached its destination.  Based upon all of the evidence, the Court concludes that a reasonable jury could find that the government met its burden of proving a single conspiracy, which did not vary from the indictment.

Court Order, ECF Doc. 192, April 3, 2008.  Clearly, defendants Bardales and Constanza Bran were more culpable than Mr. Morales.  Security was the only job for Mr. Morales.  A minor participation reduction is therefore warranted.

**Sentence Disparity**

In determining the appropriate sentence, this Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Mr. Morales submits the following cases for the Court's consideration:

4

a. On February 1, 2007, the Middle District of Florida sentenced Joaquin Mario Valencia-Trujllo to forty (40) years after he was found guilty of conspiracy to import five (5) kilograms or more of cocaine into the United States, conspiracy to engage in money laundering and participating in a continuing criminal enterprise (Case No. 02-329). The evidence presented at trial alleged that Mr. Valencia-Trujillo was responsible for the importation of more than 100 tons of cocaine annually into the United States[1];

b. On April 2, 2007, the Southern District of New York sentenced Robert James Hertular to 400 months (33 1/3 years) after he was found guilty of conspiracy to import five (5) kilograms or more of cocaine into the United States, threatening to kill federal agents and obstruction of justice. (Case No. 04-009). The evidence presented at trial alleged that Mr. Hertular was responsible for the importation of ton-quantities of cocaine into the United States[2];

c. On August 26, 2003, the Southern District of Florida sentenced Fabio Ochoa to 365 months (approximately 30 ½ years) after he was found guilty of conspiring to ship thirty (30) tons of cocaine per month to the United States from 1997 through 1999. According to the DEA, Ochoa was one of the world's most feared drug kingpins and a founding member of the Medillin Cartel, "one of the most ruthless and violent organizations the world has ever known"[3];

d. On July 10, 1992, the Southern District of Florida sentenced notorious Panamanian dictator Manuel Noriega to forty (40) years after he was found guilty of conspiring to import drugs into the United States (Case No. 88-079) – that sentence was later reduced to thirty (30) years.[4] Historically, Mr. Noriega was known as one of the most brutal and corrupt dictators of all time and his capture was the subject of a massive invasion by the United States; and finally

e. In this very district, the government recently filed a sentencing memorandum requesting a sentence of thirty-six (36) to forty (40) years for Samuel Santander Lopesierra-Gutierrez after he was found guilty of conspiracy to import cocaine

---

[1] Press Release issued by the U.S. Drug Enforcement Agency on February 1, 2007.
[2] Press Release issued by the United States Attorneys' Office for the Southern District of New York on March 22, 2007.
[3] Press Release issued by the U.S. Drug Enforcement Agency on August 27, 2003.
[4] *New York Times*, April 8, 1999.

    into the United States (Case No. 02-392). According to the government, Lopesierra-Gutierrez (a former Colombian senator) was a member of an organization responsible for the importation of multi-ton quantities of cocaine and heroin into the United States.[5] In addition, more than 3900 kilograms of cocaine were seized during the investigation of Mr. Lopesierra-Gutierrez's case.[6]

 f. Finally, in July of 2007, in the case of Anayibe Rojas Valderrama (Case No. 03-554), the government requested a fifty-five (55) to sixty (60) year sentence. The government argued the defendant was a member of a "foreign terrorist organization" (U.S. Department of State designation) and engaged in drug trafficking to finance a war and to overthrow the Colombian government. However, at sentencing, the Court imposed 200-months, or 16-years and 8-months.

Given the last example above, Mr. Morales merits consideration of a sentence below 16-years. A sentence below 16-years is in order because Mr. Morales was not a member of a terrorist organization that financed operations by importing multi-ton quantities of cocaine into the United States.

 Additionally, the 235-293 month, or approximately 20-24-year guideline range would be too close in range to other defendants with far worse criminal conduct. Mr. Morales' conduct cannot compare with a man alleged to be responsible for ton-quantities of cocaine and threatening to kill federal agents (Hertular); or, against one of the most feared drug kingpins (and a member of one of the most violent and ruthless organizations in the world) who was responsible for shipping *thirty (30) tons of cocaine to the United States per month for several years* (Ochoa); or, in a sentencing neighborhood for a man alleged to be responsible for the importation of *more than 100 tons of cocaine annually into the United States* (Valencia-Trujillo);

---

[5] Press Release issued by the U.S. Drug Enforcement Agency on October 9, 2002.
[6] *Id*.

or, with a defendant in a case where 3900 kilograms of cocaine *were actually seized*; and, finally, Mr. Morales cannot stand only 6-10 years in sentencing distance from a man that spurred a U.S. led military invasion of a country (Noriega).

### Health / Age of Mr. Morales & Impact of Sentence

Mr. Morales asks the Court for consideration of his age and medical condition as factors in mitigation, and as departure or variance from guideline calculation. At the time of sentencing, Mr. Morales will be 50-years-old and will have experienced and continue to suffer several serious medical conditions.[7] Under 18 U.S.C. §3553(a)(2)(D) a defendant must receive the needed educational or vocational training, *medical care,* or other correctional treatment in the most effective manner. Mr. Morales' health condition and the importance of receiving appropriate medical care demand sentence mitigation.

Mr. Morales asks for a downward variance in the guideline calculation due to his health conditions. There is no dispute that district courts and judicial circuits, in the past, and in the post-*Booker* era, have moved down the sentencing guideline table (whether a "departure" or a "variance") when a defendant's health demands attention.[8]

---

[7] The United States Sentencing Commission has stated that "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. §5H1.1 (2005).

[8]  *See United States v. Gee*, 226 F.3d 885, 902-03 (7th Cir. 2000) (Downward departure under U.S.S.G. §5H1.4 upheld where the district court made "particularized findings" that imprisonment would pose a substantial risk to defendant's life.); *United States v. Greenwood*, 928 F.2d 645 (4th Cir. 1991) (Downward departure to a four-year term of probation under U.S.S.G. §5H1.4 upheld because defendant lost both in Korean War and "this severe medical impairment required treatment at the Veterans Administration Hospital and incarceration would jeopardize this treatment."); *United States v. Martin*, 363 F.3d 25, 49-51 (1st Cir. 2004) (Three level downward departure pursuant to USSG §5H1.4 upheld based upon defendant's multiple disabilities and unusual vulnerability due to health conditions which created a high probability that lengthy incarceration will shorten life span.); *United States v. McClean*, 822 F. Supp. 961 (E.D.N.Y. 1993) (District court departed from 46-57 months to 33 months based on poor health and vulnerability as a result of childhood polio as defendant would suffer more than the average inmate, and was vulnerable to being taken advantage of by other inmates.); *United States v. Pineyro*, 372 F. Supp.2d 133 (D.Mass. 2005) (Medical condition and related psychological problems of defendant warranted a below-Guidelines sentence of time served (15 months of pre-trial detention) followed by three years of Supervised Release with six months of home detention – equivalent to a nine-level downward departure.); *United States v. Rioux*, 97 F.3d 648, 662-63 (2d Cir. 1996) (Second Circuit affirmed a ten-level downward departure under USSG §§5H1.4 and 5K2.0 based on the combination of defendant's medical condition and good deeds from a county sheriff convicted of mail

Recently, the United States Sentencing Commission (U.S.S.C.) took steps to identify some health issues that a court may examine in the context of reducing an already imposed sentence. The issue before the U.S.S.C. was the twenty-year-old enactment of 18 U.S.C. §3582 (c)(1)(A), which states in pertinent part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment [of a person who is already serving a sentence] after considering the factors set forth in section 3553(a) . . . if it finds that -- (i) extraordinary and compelling reasons warrant such a reduction.

At the time of enactment, Congress instructed the Commission to give criteria and examples in the Guidelines for what should be considered "extraordinary and compelling" reasons. *See* 28 U.S.C. §994(t). Yet, only recently has the U.S.S.C. provided *proposed* specific guidance for this process; factors include:

- Terminal Illness;
- *Permanent physical or medical condition*, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.; and,
- Deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within a correctional facility and for which conventional treatment promises no substantial improvement.

---

fraud and a Travel Act violation as a result of his fraudulent scheme to extort deputy sheriffs. Defendant had received a kidney transplant more than 20 years earlier, and his new kidney was diseased. Although his kidney function was normal, he required regular blood tests and prescription medications. He contracted a bone disease as a complication of the medications and required a double hip replacement. The hip replacement was successful but required monitoring. The court also considered the defendant's acts of charity, including fundraising for the Kidney Foundation.); *United States v. Testerman*, 446 F. Supp. 2d 640 (W.D. Va. 2006) (District court varied downward to a sentence of three years probation, well below the advisory guideline range of 27 to 33 months. Although a departure based on age was not available under §5H1.1 of the Guidelines unless a defendant is both "elderly and infirm," the court reviewed all the §3553(a) factors and found a variance reasonable in light of defendant's age in combination with other factors.); *United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006) (Eighth Circuit affirmed a variance sentence from 18-24 months to a five year term of probation based upon defendant's age, chronic health conditions, and role as sole caretaker for his adopted adult son, who suffered from fetal alcohol syndrome. Defendant was 67 and suffered from various chronic health conditions, including hypertension, hearing loss, cataracts, Type II diabetes, and kidney disease, which required defendant to receive three-hour dialysis treatments three times per week.); and, *United States v. Zerilli*, 187 Fed. Appx. 529, 2006 WL 1813907 (6th Cir. 2006) (unpublished) (Sixth Circuit held as reasonable a 117-month downward variance by a district court due to defendants age (not specified in the opinion), his worsening health (not further described), and the medical facilities available in prison.).

Amendment §1B1.13 - *Reduction in Term of Imprisonment as a Result of Motion by Director of Bureau of Prisons,* 2007 Amendments to the Sentencing Guidelines (Emphasis added.).  Mr. Morales submits these factors, although fashioned for post-sentencing consideration, should be part of this Court's analysis as part of the sentencing hearing and not something for consideration years down the road.

The PSI clearly sets forth Mr. Morales' medical conditions; the following specific issues are highlighted:

- Heart Condition
    a. 1994 – Heart Attack
    b. 2004 – Heart Attack ("Silent Heart Attack")
    c. High Cholesterol
    d. Medications:
        i. Zocor[9] – 80 mg
        ii. Metropolol Tartrate[10] – 25 mg
- Spinal Condition
    a. 1996 Surgery for two herniated discs

*See* PSI, p.9 ¶38.  Mr. Morales' health concerns demand a higher level of care than an average inmate.  Additionally, extended incarceration will only further aggravate his conditions and a slow deterioration of his health status will continue.

---

[9] "Zocor is an HMG-CoA reductase inhibitor, also known as a "statin."  It works by reducing the production of certain fatty substances in the body, including cholesterol."  Zocor lowers "high cholesterol and triglycerides in certain patients. It also increases high-density lipoprotein (HDL, "good") cholesterol levels….It is used in certain patients to reduce the risk of heart attack, stroke, and death due to coronary heart disease. It is also used to reduce the need for medical procedures to open blocked blood vessels. It is also used in certain patients to reduce the risk of heart attack, stroke, blood vessel blockage, or chest pain caused by angina." *See* http://www.drugs.com/cdi/zocor.html.

[10] "Metroprolol Tartrate is a beta-adrenergic blocking agent (beta-blocker). It works by reducing the amount of work the heart has to do (reduces chest pain) and the amount of blood the heart pumps out (lowers high blood pressure). It is also used to stabilize the heart rhythm in conditions in which the heart is beating too fast or at an irregular rhythm. Specifically, it is used to treat "high blood pressure, alone or with other medicines; long-term treatment of chest pain; and reducing the risk of death because of heart problems in patients who have had a heart attack." *See* http://www.drugs.com/Metoprolol_Tartrate/index.html.

**Nature of Case**

Some of the factors this Court must consider under §3553 (a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
	(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

Mr. Morales respectfully submits that while this court rejected his post-trial motions for acquittal and new trial, he submits that issues relating to separate conspiracies merit sentence mitigation. As previously argued, Mr. Morales continues to maintain that the government failed to present sufficient evidence to sustain a conviction for the narcotics conspiracy alleged in Count 1 of the Superseding Indictment. Rather, the proof offered at trial demonstrated the existence of multiple conspiracies with "stops-and-starts," rather than the single one alleged in the Superseding Indictment. *See United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988) (*citing*, *Kotteakos v. United States,* 328 U.S. 750 (1946)*.*

Mr. Morales maintains that the government failed to establish proof of an agreement between Mr. Morales and others with regard to the single, overarching conspiracy charged. *See Iannelli v. United States,* 420 U.S. 770, 777 (1975); *United States v. Lively,* 803 F.2d 1124, 1129 (11th Cir. 1986). Yet, for the purposes of sentencing, Mr. Morales argues that the state of the evidence merits sentence mitigation.

**Family Circumstances**

Under 18 U.S.C. §3553 (a)(1), Mr. Morales asks the Court to take into consideration family circumstances as they relate to his family responsibilities and ability to maintain meaningful contact with his family. There is no dispute that Mr. Morales is not in his homeland, that he was tried in a foreign country, and that he may never see his family again. Anticipating

incarceration, he knows that there will be no family visits, no chance to hold the hand of his wife, hug his children and offer any paternal contact or support. Given these family circumstances, Mr. Morales merits a variance of guideline calculation as well as mitigation at sentencing.[11]

---

[11] Support for such a variance is found in the following authorities as they relate to Guideline reductions: *United States v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000)(within district court's discretion to depart downward four levels for extraordinary family circumstances "based on the fact that there is an 8 year-old son who's lost a father and would be losing a mother for a substantial period of time"); *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999)(where defendant supported four young children and wife worked 14 hours a day 44 miles from home and barely able to provide for children, and at risk of losing custody of children and job, and no extended family to take custody of children, departure of three levels to 37 months, making defendant eligible for shock incarceration, warranted under §5H1.6 "to minimize the impact of defendant's children"); *United States v. Owens*, 145 F.3d 923 (7th Cir. 1998)(affirmed downward departure from level 32 (169 to 210 months) to 120 months under §5H1.6 for defendant convicted of possession of crack cocaine with intent to distribute where "he maintained a good relationship with his [three] children"; he also spent time every day with a brother who suffered from Downs Syndrome and where common law wife testified that if the defendant went to prison "she might have to move to public-assisted housing and receive welfare benefits." District court said defendant's situation "differs from that of a typical crack dealer in that [the defendant] takes an active role in raising his children and supporting his family"); *United States v. Galante,* 111 F.3d 1029 (2d Cir.1997)(affirms district court's downward departure in drug case from 46-57 months to 8 days – where defendant showed he was a conscientious and caring father of two sons who would have faced severe financial hardships); *United States v. Ekhator*, 17 F.3d 53 (2nd Cir. 1994)(even where defendant agreed not to ask for downward departure court may do so sua sponte if unusual family circumstances; here Nigerian widow with five children, three of whom were very ill; remanded); *United States v. One Star*, 9 F.3d 60 (8th Cir. 1993)(ex-felon in possession – departure downward from 33-months to probation proper where defendant not dangerous, possessed revolver in self-defense, had strong family ties, and lived on Indian reservation); *United States v. Sclamo*, 997 F.2d 970 (1st Cir. 1993)(affirmed downward departure from 24-30 month range to six-months home detention for defendant who had been living with a divorced woman and her two children since and had developed special relationship with woman's son that helped ameliorate son's serious psychological and behavioral problem, and son would regress if defendant incarcerated); *United States v. Gaskill*, 991 F.2d 82, 85-86 (3d Cir. 1993)(remanded for court to consider whether downward departure to house confinement or probation warranted under §5H1.6 where defendant was only care provider to mentally ill wife, no danger to community – indeed benefit to it by allowing defendant to care for wife – and only short period of incarceration called for); *United States v. Johnson*, 964 F.2d 124, 128-130 (2d Cir. 1992)(where defendant was a single mother responsible for three young children and young child of her institutionalized daughter, departure not because defendant has lesser culpability but because "we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing"); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991)(defendant and wife cared for four and eleven year old and disabled father and paternal grandmother, incarceration could well result in destruction of an otherwise strong family unit); *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir. 1991)(single parent of infant and sole support of sixteen-year-old daughter and daughter's infant); *United States v. Big Crow*, 898 F.2d 1326, 1331 (8th Cir. 1990) (solid family and community ties and "consistent efforts to lead a decent life in the difficult environment" of an Indian reservation); *United States v. Kloda*, 133 F.Supp.2d 345 (S.D.N.Y. 2001)(husband and wife who filed false tax returns for their business entitled to downward departure in part because of needs of their small children."); *United States v. Tineo*, 2000 WL 759837 (S.D.N.Y. June 8, 2000)(downward departure is warranted if "incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit" in credit card fraud departure from 10 to 16 months to probation is warranted where mother sole financial support of three young children); *United States v. Blake*, 89 F.Supp.2d 328 (E.D.N.Y. 2000)(in bank robbery, departure from level 29 to level 8 and probation proper in part because of emotional trauma 3-year-old daughter would suffer); *United States v. Wehrbein*, 61 F.Supp.2d 958 (D. Neb. 1999)(downward departure to probation in case involving low-level trafficking in methamphetamine and possession of weapons; where defendant's 11-year-

**Deportable Immigration Status**

Mr. Morales asks for a downward departure and sentencing mitigation based upon his anticipated deportation. *United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1999). Clearly, Mr. Morales will not have access to work-release programs or early-release programs that are available to similarly situated defendants that are not deportable.

**Bureau of Prison Designation & Security Classification**

Mr. Morales will face two competing factors when the Bureau of Prisons conducts its evaluation for placement. The factors will be security as measured against medical care.

The BOP has recently begun making medical designations using a four-level scale. *See* A. Ellis & J. M. Henderson, *Federal Prison Guidebook* 5-6 (205-06 ed.). Each prisoner is assigned a "level" from one to four that reflects, at least in theory, the prisoner's perceived medical needs, with higher numbers corresponding to greater medical needs. Every institution is

---

old son, whose emotional and mental disorders improved markedly when defendant returned from serving state sentence on similar charges, would be harmed if defendant not present to provide continued structured discipline, there were no other care givers available to substitute for defendant and federal government could have avoided or lessened impact on child if federal prosecutor had not delayed 14 months after matter was referred before commencing federal case); *United States v. Hammond*, 37 F.Supp.2d 204 (E.D.N.Y. 1999)(defendant in drug case suffering from advanced HIV entitled to a downward departure from 48 to 18 months where family will suffer extraordinary financial and emotional harsh from his incarceration. "A sentence without a downward departure would contribute to the needless suffering of young, innocent children."); *United States v. Lopez*, 28 F.Supp.2d 953 (E.D.Pa. 1998)(extraordinary family circumstances warranted a downward departure of six levels for a defendant who pleaded guilty to conspiracy to distribute heroin and to forfeiture charge where D's seven-year-old daughter suffered mental illness and attempted suicide since the defendant's arrest. A risk existed that the defendant's parental rights would be terminated if she was sentenced to her full range of incarceration. In addition, the defendant was not involved in large-scale drug dealing); *United States v. Chambers*, 885 F.Supp. 12, 14 (D.D.C. 1995)(defendant is single mother with two children ages 12 and 15, incarcerating defendant for 15 years would deprived children of sole parent "that children need supportive and loving parents to avoid the perils of life is without question . . . causing needless suffering of young, innocent children does not promote the ends of justice"); *United States v. Blackwell*, 897 F.Supp. 586, 588 (D.D.C. 1995)(causing needless suffering of innocent children not in the interests of justice); *United States v. Rose*, 885 F.Supp. 62 (E.D.N.Y. 1995)(defendant charged with interstate receipt of firearm, who had no prior record and who assumed role of non-custodial surrogate father to four children and aided struggling grandmother in raising them merited downward departure to probation because the departure "is on behalf of the family"); *United States v. Newell*, 790 F.Supp. 1063, 1064 (E.D.Wash. 1992)(granting downward departure to defendant who was caretaker of six young children).

also assigned a "level" from one to four, reflecting the resources at the institution and in its corresponding community.

Level one institutions have only the BOP's minimum medical resources and are not near community medical centers, and Level four institutions are federal medical centers, "major medical facilities where at least part of the institution provides specialized health services." *Legal Resource Guide to the Federal Bureau of Prisons* 29 (Federal Bureau of Prisons 2004) (http://www.bop.gov/news/PDFs/ legal_guide.pdf).

Mr. Morales' health issues, as described above, could be classified as chronic medical conditions requiring Level 3 care. *See generally* Ellis & Henderson, *supra*, p.43 at 5-6. The Level 3 institution closest to the D.C. region is the Federal Correctional Institution in Butner, North Carolina. However, if Mr. Morales required *inpatient treatment* he would be redesignated to Level 4 and transferred to the federal medical center adjacent to FCI Butner.

Unfortunately, federal medical centers are also "administrative facilities," and therefore hold inmates in all security categories. *See* "Prison Types & General Information," http://www.bop.gov//locations/institutions/index.jsp. Should this happen, Mr. Morales might find himself sharing quarters with a maximum-security violent offender – one in need of medical care – but, an inmate that would not be similarly classified for security.

The designation dilemma discussed continues to highlight the need to mitigate the sentence of Mr. Morales given the conflict of medical and security considerations. A lengthy sentence would essentially lead to the continued physical deterioration of Mr. Morales in light of substandard or overburdened BOP medical care.[12]

---

[12] In 1994, the GAO reported to Congress that understaffing, poor training, and inadequate quality assurance programs resulted in prisoner medical needs routinely going unmet. "Bureau of Prisons Health Care: Inmates' Access to Health Care Is Limited By Lack of Clinical Staff," GAO/HEHS 94-36 (February 1994). The state of medical care at BOP facilities has further deteriorated in the years since the GAO's 1994 report, as the combination

## Conclusion

Mr. Morales asks the Court for sentencing mitigation pursuant to downward guideline departures and 18 U.S.C. §3553 (a)(1) based on a review of all the circumstances set forth above, and any others that may be raised at the sentencing hearing.[13] Whether downward departure or

---

of soaring federal prison populations and budget constraints have widened the gap between medical need and available care in federal prisons. One study documented what the researcher called "symbolic" medical care, *i.e.*, BOP medical staff "going through the motions" of providing medical treatment: Symbolic medical care is a common theme among prisoners interviewed:

> "These people . . . don't care if you're sick or dying. This so called medical care ain't nothin but a big show. These doctors, hell most of em ain't even doctors, fill out their little forms so they can say they're doin somethin for ya. They ain't. They don't care if you live or die. It's all just a show for the public."

Daniel S. Murphy, "Health Care in the Federal Bureau of Prisons: Fact or Fiction," 3 Cal. Journal of Health Promotion 25, 29 (2005).

[13] Departures or variances are recognized in a Guideline framework when the "combination of factors" indicates that a departure is appropriate. *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991); *United States v. Lam*, 20 F.3d 999, 1003-005 (9th Cir. 1994) ("a number of convergent factors" supported conclusion that defendant's conduct aberrant); *United States v. Coleman*, 188 F.3d 354, 360 (6th Cir.1999) (en banc) (downward departure may be based on an aggregation of factors each of which might in itself be insufficient to justify a departure); *United States v. Jones*, 158 F.3d 492 (10th Cir.1998); *United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996) (following Koon, based on defendant's health problems – severe kidney disease and good acts – charitable fund-raising – departure from level 20 to level 10 and sentence of probation approved); *United States v. Fletcher*, 15 F.3d 553 (6th Cir. 1994) (combination of factors including age of priors justified departure from career offender); *United States v. Parham*, 16 F.3d 844 (8th Cir. 1994); United States v. Broderson, 67 F.3d 452, 458-59 (2d Cir. 1995) (relying on *United States v. Rivera*, 994 F.2d 942 (1st Cir. 1993) (Breyer, J.) in fraud case, district court has "better feel" for unique circumstances of the case; here combination of factors – loss overstated seriousness of defendant's conduct; restitution paid; no personal benefit; contract favorable to government-- justify 7 level departure); *United States v. Cuevas-Gomez*, 61 F.3d 749 (9th Cir. 1995)(court may depart in aggravated reentry case even though directed by guidelines to increase offense level by 16 levels). District Court *United States v. Bruder*, 103 F.Supp.2d 155, 190 (E.D.N.Y. 2000)(defendant's role in caring for his brother, who is a quadriplegic, service in the United States Marine Corps from June 1984 to April 1988, a notable record as a police officer, receipt of numerous medals and letters of recognition warrant a four-level reduction in Schwarz's offense level); *United States v. Ribot*, 97 F.Supp.2d 74 (D.Mass. 1999)(where defendant embezzled $200,000, court downward departs to probation from range of 24-36 months based on combination of aberrant behavior and mental illness); *United States v. Somerstein*, 20 F.Supp.2d 454 (E.D.N.Y. 1998)(defendant's history of charitable efforts, exceptional work history, and experiences as a child victim of the Holocaust, when considered together, created a situation which differed significantly from the "heartland" of cases, and warranted a downward departure after defendant was convicted of mail fraud, making false statements, and conspiracy in connection with actions taken as principal of a catering firm. The defendant had performed numerous charitable works and was an exceptionally hardworking person devoted to her profession, and the court stated that it "[S]imply . . . cannot see incarcerating" defendant for her offenses after what she had experienced during the Holocaust, in which she lost half of her family); *United States v. Delgado*, 994 F.Supp. 143 (E.D. N.Y. 1998)(three level downward departure to first-time offender, drug courier based on coercion from a creditor and combination of aberrant behavior, defendant's fragility, and his exceptionally difficult life); *United States v. Patillo*, 817 F. Supp. 839 (C.D.Cal. 1993)(complex of mitigating factors including aberrant conduct, minimal role, and assistance to probation officer during L.A. riots).

variance, Mr. Morales respectfully ask the Court to heed the eloquent words of Justice Kennedy in *Koon v. United States*, upholding downward departures in that case, who wrote:

> It has been "uniform and constant in the federal judicial tradition" for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue."

*Koon v. United States*, 518 U.S. 81, 113 (1996).

**WHEREFORE,** for the arguments and authorities cited Mr. Morales asks the Court for the relief sought.

Respectfully submitted,

**RETURETA & WASSEM, P.L.L.C.**

By: _____/s/_____
Manuel J. Retureta, Esq.
District of Columbia Bar #430006
601 Pennsylvania Avenue, NW
South Building ~ Suite 900
Washington, D.C. 20004
(202) 220-3073
Counsel for Juan del Cid Morales

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of this pleading has been served on all parties via ECF filing.

_____/s/_____
Manuel J. Retureta