UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN DEL CID MORALES,<br><br>Defendant. | Criminal Action No. 06-248-4 (JDB) |

**MEMORANDUM OPINION**

Before the Court is defendant Juan Del Cid Morales' motion for compassionate release and his motion for appointment of counsel. For the reasons set forth below, the Court finds that Mr. Morales has failed to demonstrate an "extraordinary and compelling reason" warranting a reduction in his sentence and that, due to the straightforward nature of the issues presented here, the interests of justice do not require the appointment of counsel to assist Mr. Morales. The Court will therefore deny both of defendant's motions.

**Background**

Juan Del Cid Morales is 64 years old and is currently serving a 220-month sentence of incarceration at Giles W. Dalby Correctional Facility ("GWDCF") for conspiracy to import five kilograms or more of cocaine into the United States. See Judgment [ECF No. 205]; Mot. for Sentence Reduction Under the Compassionate Release Program ("Def.'s Mot.") Ex. 1 ("Def.'s Medical Records") [ECF 305-1] at 16 (listing defendant's date of birth). Mr. Morales has served approximately 180 months of his sentence; according to Bureau of Prisons ("BOP") records, he is projected to be released on May 12, 2022. See Gov't's Resp. in Opp'n to Mot. For Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) as Amended by the First Step Act of 2018 ("Gov't

1

Opp'n") Ex. 1 [ECF No. 310-3] at 1–2. Mr. Morales is neither a citizen nor legal resident of the United States, see Def.'s Mot. for Appointment of Counsel [ECF No. 306]; Gov't Opp'n [ECF No. 310-2] at 8, and he is subject to an immigration detainer issued by U.S. Immigration and Customs Enforcement ("ICE"), see Gov't Opp'n Ex. 7 [ECF No. 310-9]. Consequently, "upon completion of his current sentence [he will be] transferred to an Immigration Detention Center where it will be determined whether or not he will be removed to his country of origin," Guatemala. Id.

On May 11, 2020, Mr. Morales requested that the GWDCF warden "consider [him] for compassionate release" due to various medical conditions in combination with the COVID-19 pandemic. Gov't Opp'n Ex. 3 ("Def.'s BOP Request") [ECF No. 310-5]; see also Def.'s Mot. [ECF No. 305] at 3. Specifically, Mr. Morales listed a "chronic heart condition, high blood pressure, type 2 diabetes, [and] [high] cholesterol" as conditions supporting his release. Def.'s BOP Request. On May 18, 2020, the warden denied Mr. Morales' request because of his outstanding immigration detainer and because he had failed to provide a release plan as required by BOP regulations. See Def.'s Mot at 4. Mr. Morales did not appeal that determination. See Gov't Opp'n at 7 & n.6.

On May 12, 2021—almost exactly one year after he submitted his request to the warden—Mr. Morales, proceeding pro se, submitted by mail the present motions for compassionate release and for appointment counsel.[1] Both motions were docketed by order of this Court on June 1, 2021.

---

[1] Courts have "discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require," United States v. Edwards, Crim. A. No. 03-234 (JDB), 2021 WL 3128870, at *1 n.2 (D.D.C. July 22, 2021) (quoting United States v. Evans, Crim. A. No. 18-103 (EGS), 2020 WL 3542231, at *3 n.3 (D.D.C. June 30, 2020)), but when the issues presented by a compassionate release motion are straightforward, courts in this District regularly find that the interests of justice do not require appointment of counsel. E.g., Edwards, 2021 WL 3128870, at *1 n.2; United States v. Piles, Crim A. No. 19-292-5 (JDB), 2021 WL 1198019, at *1 n.2 (D.D.C. Mar. 30, 2021); see also United States v. Fields, Crim No. 19-0048 (PLF), 2021 WL 780738, at *4 (D.D.C. Mar. 1, 2021) ("Because the court concludes that Mr. Fields' motion lacks merit, the Court will also deny Mr. Fields' request for appointment

See Docket Entry Nos. 305 & 306. Along with his motion, Mr. Morales attached a copy of his earlier request to the warden, as well as over 250 pages of medical records. In his compassionate release motion, Mr. Morales again cites the COVID-19 pandemic, pointing specifically to his "high blood pressure, asthma[], and respiratory complications" and arguing that "[h]e has unique medical concerns that present a heightened risk for infections and medical complications if he contracts the COVID-19 disease." Def.'s Mot. at 1. In short, he writes: "Not every inmate is at serious risk. Mr. Morales is an exception." Id. The government filed an opposition to Mr. Morales's motion for compassionate release on July 12, 2021. The motions are now ripe for consideration.

## Analysis

Under the First Step Act of 2018, a court may, upon motion of a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). However, the court may consider a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The statute's exhaustion requirement is mandatory, United States v. Douglas, Crim. A. No. 10-171-4 (JDB), 2020 WL 5816244, at *1 (D.D.C. Sept. 30, 2020); accord United States v. Alam, 960 F.3d 831, 833–36 (6th Cir. 2020), and it embeds an "issue exhaustion" requirement, such that "[f]or a

---

of counsel."). The Court finds that the issues presented here are indeed straightforward and that Mr. Morales' motion lacks merit, such that the interests of justice do not require the appointment of counsel for Mr. Morales. The Court will accordingly deny Mr. Morales' motion.

petitioner's request to the warden to exhaust administrative remedies . . . , the request must be premised on the same facts alleged in the corresponding motion filed with the court," Douglas, 2020 WL 5816244, at *2 (alteration in original) (quoting United States v. Samak, Crim. A. No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020)). Thus, "although an inmate's 'request to the warden need not be identical in detail or specificity to the motion made in court . . . there must be a reasonable degree of overlap [between the administrative request and subsequent motion] which gives the [BOP] a fair opportunity to consider whether to make the motion on the defendant's behalf.'" United States v. Johnson, Crim. A. 02-310 (JDB), 2021 WL 3737681, at *3 (D.D.C. Aug. 24, 2021) (quoting Douglas, 2020 WL 5816244, at *2). In other words, inmates may not present one reason to BOP and another to the Court.

If the statute's exhaustion requirement has been satisfied, the court must make "two essential determinations" before granting a motion for compassionate release: first, "whether there are extraordinary and compelling reasons for the reduction," and, second, if so, "whether, despite the fact that a sentence reduction is warranted, section 3553(a)'s purposes of punishment require maintenance of the original prison term." United States v. Johnson, 464 F. Supp. 3d 22, 30–31 (D.D.C. 2020). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Long, Crim. A. No. 10-171-1 (JDB), 2021 WL 3792949, at *1 (D.D.C. Aug. 26, 2021) (quoting United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020)). That burden is substantial: "Cutting short a duly authorized prison sentence is, in the statute's own words, an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling.'" United States v. Shabazz, Crim. A. No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021) ("Shabazz II"). Although "Congress has not defined

4

with specificity what satisfies this standard, . . . it is clear that the bar is exceedingly high." Id. (citing United States v. Winston, Case No. 1:94-CR-296-11 (RCL), 2021 WL 2592959, at *6 (D.D.C. June 24, 2021)).

I. **Exhaustion**

The government first raises a threshold objection to Mr. Morales' compassionate release motion, arguing that he failed to exhaust his administrative remedies as required by § 3582(c)(1)(A) because he did not appeal the warden's denial of his request using the process set forth in BOP regulations. See Gov't Opp'n at 9; see also 28 C.F.R. § 571.63(a) (permitting inmates to appeal denial "through the Administrative Remedy Procedure"); 28 C.F.R. § 542.15 (detailing the Administrative Remedy Procedure). But this is not what the statute requires. A defendant may bring a motion for compassionate release either "after [he] has fully exhausted all administrative rights to appeal [the warden's denial]"—i.e., after he has gone through the Administrative Remedy Procedure—or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." See 18 U.S.C. § 3582(c)(1)(A). Thus, the "plain language of the statute . . . provides that a defendant can either exhaust administrative appeals or wait 30 days." United States v. Price, 496 F. Supp. 3d 83, 86 (D.D.C. 2020); accord United States v. Greene, 516 F. Supp. 3d 1, 21 (D.D.C. 2021) ("[S]ection 3582(c)(1)(A) permits a defendant to clear the exhaustion hurdle . . . by merely asking the BOP to file a motion on his behalf and then waiting 30 days before filing a motion with the court, whether or not the BOP has responded to or denied the defendant's request."). In this case, Mr. Morales submitted his initial request for compassionate release to the warden on May 11, 2020; it was denied one week later. Def.'s Mot. at 3–4. He then submitted the present motion to this Court on May 12, 2021, far more than 30 days after his request was

received by the GWDCF warden.  Mr. Morales has thus clearly satisfied the statute's 30-day waiting period.

Mr. Morales's motion also poses another threshold question, this time regarding § 3582(c)'s "issue exhaustion" requirement.  In his May 2020 request to the warden, Mr. Morales sought compassionate release based on the COVID-19 pandemic and four medical conditions: a heart condition, diabetes, hypertension, and high cholesterol.  Def.'s BOP Request.  In his motion, Mr. Morales likewise relies on the threat of COVID-19 and reiterates that he suffers from hypertension, but he fails to mention the three other conditions listed in his administrative request. Def.'s Mot. at 1.  Instead, he adds two new health conditions in the present motion: asthma and unspecified "respiratory problems."  Id.  In other words, two of the three health conditions Mr. Morales presents to this Court were not mentioned in his request to the warden, and three of the conditions he did mention to the warden are not reflected in the instant motion.

Were the Court to apply § 3582's exhaustion requirements stringently, the Court would only consider Mr. Morales's hypertension, the sole ailment he mentioned to both the warden and this Court.  But this draconian outcome would be inappropriate, bordering on unjust.  The Court has an "obligation to provide pro se litigants with somewhat more latitude than is provided to litigants represented by counsel," U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 293 F. Supp. 3d 77, 81 (D.D.C. 2018), and it must "consider a pro se plaintiff's complaint 'in light of all filings' before dismissing for failing to state a claim," Webb v. U.S. Veterans Initiative, 993 F.3d 970, 972–73 (D.C. Cir. 2021) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)).  Mr. Morales attached a copy of his warden request to the instant motion, and so, applying these principles, the Court will consider all the medical conditions listed in that request, including his heart condition, cholesterol, and diabetes.

6

As for his asthma and unspecified respiratory issues, it is not immediately clear, given the particular relevance of pre-existing lung conditions to the threat of COVID-19, whether there is a "reasonable degree of overlap" between his request omitting these conditions and his motion raising them. Yet Mr. Morales made the same basic argument in both of his requests: that his medical conditions make him particularly vulnerable to COVID-19. See United States v. Jeffers, 466 F. Supp. 3d 999, 1005–06 (N.D. Iowa 2020) (finding that defendant's administrative request, which did not mention his diabetes but otherwise "focus[ed]" on "the threat of exposure to COVID-19 in light of his underlying health conditions," satisfied § 3582(c)'s issue exhaustion requirement); Edwards, 2021 WL 3128870, at *2 (noting that "it is possible that the inclusion of a broad 'health concern' claim in the [warden] request itself is enough to satisfy the exhaustion requirement," even though defendant relied on vision loss and obesity before the court while only mentioning a lung injury to the warden). That fundamental similarity between Mr. Morales's request and his motion distinguishes this case from others in which courts have held § 3582(c)'s issue exhaustion requirement unsatisfied. See Johnson, 2021 WL 3737681, at *3 (defendant had not exhausted remedies where request to warden only discussed COVID but motion raised a claim under U.S. v. Winstead, 890 F.3d 1082 (D.C. Cir. 2018)); United States v. Shabazz, 502 F. Supp. 3d 194, 195–96 (D.D.C. 2020) ("Shabazz I") (exhaustion not satisfied when administrative request only discussed need to care for elderly mother but defendant made a pandemic-related argument in motion), vacated on other grounds, 848 F. App'x 441 (D.C. Cir. 2021). Especially given Mr. Morales' pro se status, this is likely enough to satisfy § 3582(c)'s exhaustion requirement with respect to all of his alleged medical conditions.[2] However, "the Court need not decide this issue

---

[2] Mr. Morales' medical records evince a few other health issues which he failed to raise with either the warden or this Court. Consequently, the Court will not consider them here. Even if it did, those conditions would not alter the Court's conclusion in light of Mr. Morales' vaccination status and the minimal spread of COVID-19 at his facility.

because, even assuming [Mr. Morales] has properly exhausted his request, his motion fails on the merits." Edwards, 2021 WL 3128870, at *2; accord Piles, 2021 WL 1198019, at *1.[3]

## II. Extraordinary and Compelling Circumstances

Construing Mr. Morales's submissions as set forth above, he has presented to the Court six medical conditions: hypertension, high cholesterol, type 2 diabetes, a "chronic heart condition," asthma, and "respiratory complications." These conditions, he argues, "present a heightened risk for infections and medical complications if he contracts the COVID-19 disease" that qualifies as an "extraordinary and compelling reason" warranting a reduction in his sentence. Def.'s Mot. at 1. The Court does not agree. Considering the lack of support in his medical records for certain of his alleged ailments, the current state of the pandemic, and the immigration detainer requiring his transfer to the custody of ICE after the expiration of his sentence, the Court finds that Mr. Morales has failed to demonstrate an extraordinary and compelling reason justifying a sentence reduction.

At the outset, three of Mr. Morales's six asserted conditions find no support in the medical records he provided. The only "heart condition" reflected in the records is his hypertension. See, e.g., Def.'s Medical Records at 41–43 (discussing the status and plan for addressing Mr. Morales's "HTN/Cardiac" [issue]); see also Hypertension, Taber's Cyclopedic Medical Dictionary (24th ed. 2021), available at https://www.tabers.com/tabersonline/view/Tabers-Dictionary/765649/all/hypertension (noting that "HTN" is the standard medical abbreviation for

---

[3] Although § 3582(c)'s exhaustion requirement is mandatory, it is not jurisdictional. See Piles, 2021 WL 1198019, at *1 n.1; Johnson, 464 F. Supp. 3d at 28 ("In the District of Columbia, every court that has considered the jurisdictional or non-jurisdictional nature of [§ 3582(c)(1)(A)'s exhaustion requirement] . . . has consistently concluded that [it] is not jurisdictional . . . ."); see also United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); Alam, 960 F.3d at 833–34. The Court may thus properly turn to the merits of the case without explicitly deciding the exhaustion question. See Edwards, 2021 WL 3128870, at *2 n.4.

hypertension). Moreover, the Court has been unable to find any mention of asthma or other such "respiratory complications" in Mr. Morales's records. On the contrary, the only discussions of his pulmonary health <u>rule out</u> such respiratory issues. <u>See, e.g.</u>, Def.'s Medical Records at 32 (check-up notes stating "lung sound clear in all fields"); <u>id.</u> at 38 (noting that Mr. Morales exhibits no "dyspnea, cough, wheezing, or hemoptysis" (cleaned up)); <u>id.</u> at 176 (results of an April 2021 chest x-ray showing that "[a]dequate lung volumes [were] demonstrated [and] . . . . [there is] [n]o acute cardiopulmonary disease or evidence of active TB"). Thus, the Court will disregard Mr. Morales's assertions of a "chronic heart condition," asthma, and "respiratory complications," as they are unsupported—or even contradicted—by the records before the Court.

The question, then, is whether Mr. Morales's hypertension, diabetes, and high cholesterol, in combination with the current threat of COVID-19, constitute extraordinary and compelling circumstances warranting a sentence reduction. They do not.

Mr. Morales suffers from high cholesterol, <u>see</u> Def.'s Medical Records at 21 (recording "abnormal[ly]" high LDL cholesterol levels on Sept. 24, 2020); <u>id.</u> at 48 (noting defendant's diagnosis with "mixed hyperlipidemia" as of March 17, 2021); Gov't Opp'n Ex. 4 at 2 (same as of June 4),[4] but neither the CDC nor the Mayo Clinic report that high cholesterol subjects an individual to greater-than-normal risk of COVID-19 complications. <u>See</u> <u>People with Certain Medical Conditions</u>, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021) ("CDC Risk Factors"); <u>COVID-19: Who's at Higher Risk of Serious Symptoms?</u>, Mayo Clinic,

---

[4] Supplementing the 258 pages of medical records provided by defendant, the government submitted a twenty-page summary of Mr. Morales's medical records provided by BOP. This document is attached as Exhibit 4 to the government's opposition brief and, per BOP's representation, it was created on June 4, 2021. <u>See</u> Gov't Opp'n at 8 n.7.

9

https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-who-is-at-risk/art-20483301 (last updated Aug. 24, 2021); see also Johnson, 2021 WL 3737681, at *5; United States v. Robinson, Crim. A. No. 04-128 (RDM), 2021 WL 1318027, at *6 (D.D.C. Apr. 8, 2021). To be sure, those institutions do not have a monopoly on information about COVID-19 risks, although the CDC's guidance in particular is "material" and frequently relied on by courts assessing motions for compassionate release. E.g., United States v. Powell, 468 F. Supp. 3d 398, 403 (D.D.C. 2020). And there is some support for the notion that high cholesterol is associated with higher COVID risk. E.g., Kun Zhang et al., Causal Associations Between Blood Lipids and COVID-19 Risk: A Two-Sample Mendelian Randomization Study, Arteriosclerosis, Thrombosis, and Vascular Biology (Sept. 9, 2021), available at https://doi.org/10.1161/ATVBAHA.121.316324; cf. Robinson, 2021 WL 1318027, at *7 (discussing and generally disregarding similar studies). But in the end, the evidence before the Court "fail[s] to explain adequately—either in qualitative or quantitative terms—the specific risk that [defendant's high cholesterol] pose[s]." Robinson, 2021 WL 1318027, at *7.

Mr. Morales's other two health conditions—diabetes and hypertension—provide a stronger basis for his argument of heightened susceptibility to COVID-19. See Gov't Opp'n at 7–8 (conceding defendant's diagnosis with "type 2 diabetes mellitus without complications . . . [and] essential (primary) hypertension"); Gov't Opp'n Ex. 4 at 10 (noting same diagnoses); Def.'s Medical Records at 48 (same in March 2021). Type 2 diabetes creates a heightened risk for serious COVID illness. See CDC Risk Factors ("Having either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19."); Am. Diabetes Ass'n, How COVID-19 Impacts People with Diabetes, https://www.diabetes.org/coronavirus-covid-19/how-coronavirus-impacts-people-with-diabetes (last visited Oct. 5, 2021) ("People with diabetes are more likely to have

serious complications from COVID-19."). The relationship between hypertension and COVID-19 complications is more context-specific. While pulmonary hypertension (a condition Mr. Morales does not have) is a clear risk factor, ordinary hypertension only "possibly" "make[s] [a patient] more likely to get severely ill from COVID-19." CDC Risk Factors; accord Clinical Questions About COVID-19: People with Hypertension, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last updated Mar. 4, 2021) ("[P]eople whose only underlying medical condition is hypertension might be at increased risk for severe illness from COVID-19." (emphasis added)); see also Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last updated May 13, 2021) (characterizing hypertension as a "co-morbidit[y] that [is] supported by mixed evidence"). Although "controlled or benign hypertension" usually does not constitute extraordinary and compelling circumstances, courts (including this one) have also recognized that severe, uncontrolled hypertension can, in combination with the "prevalence of COVID-19 at [defendant's facility]," qualify as an extraordinary and compelling reason for release. See Douglas, 2021 WL 214563, at *5–7 (granting compassionate release for defendant with very severe case of hypertension and collecting cases holding that mild hypertension was insufficient); see also Johnson, 2021 WL 3737681, at *6 ("Johnson's well-managed hypertension does not qualify as an extraordinary and compelling reason for release.").

In Mr. Morales's case, both his hypertension and diabetes are "stable," see Def.'s Medical Records at 42; see also id. at 37 (noting Mr. Morales's "mild" diabetes), and his medication regime appears to be effectively managing both conditions, see id. at 1; Gov't Opp'n Ex. 4 at 2–3. A diabetic's "risk of getting very sick from COVID-19 is likely to be lower if [his] diabetes is well-

11

managed."  Am. Diabetes Ass'n, How COVID-19 Impacts People with Diabetes (last visited Oct. 5, 2021); see also United States v. Hoffman, Crim. A. No. 01-169, 2021 WL 2810068, at *8 (E.D. Pa. July 6, 2021) (declining to find extraordinary and compelling circumstances when, "[d]espite being classified as COVID-19 risk factors, Defendant's diabetes and obesity appear[ed] well managed while he [wa]s incarcerated").  And as Mr. Morales's hypertension appears to be under control, his condition is more analogous to the "well-managed" hypertension in Johnson than to the "hypertensive crisis" of Douglas.  Compare Johnson, 2021 WL 3737681, at *6, with Douglas, 2021 WL 214563, at *5–6.

Nonetheless, Mr. Morales's high blood pressure and type 2 diabetes likely do heighten his risk of serious consequences from COVID-19, even if that risk is somewhat mitigated by his management of those conditions at present.  Indeed, early in the pandemic, this combination of conditions could qualify as "extraordinary and compelling" in some cases.  See Johnson, 464 F. Supp. 3d at 36–39 (granting compassionate release to defendant with pulmonary hypertension, obesity, and post-traumatic stress disorder in May 2020); United States v. Lacy, No. 15-cr-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020) (same for defendant with severe obesity, hypertension, and diabetes); see also United States v. Hunter, Crim. No. 11-039 (PLF), 2020 WL 5748115, at *2 (D.D.C. Sept. 25, 2020) ("[Defendant's] underlying medical conditions [Type 2 diabetes, Stage 2 hypertension, and Hepatitis C] and the presence of COVID-19 at FCI Edgefield are therefore 'extraordinary and compelling' circumstances warranting a sentence reduction."); United States v. Clayton, Crim. Case No. 16-153-1 (BAH), 2021 WL 1700192, at *3 (D.D.C. Apr. 29, 2021) (noting government's concession of an extraordinary and compelling reason when defendant had high blood pressure, diabetes, and asthma and was incarcerated at facility with a COVID-positivity rate five times higher than in the U.S. population as a whole).

But suffice it to say, it is no longer early in the pandemic.  Judge Brown Jackson based her decision in Johnson in part on the facts that, at that time, "vaccines [were] months (or more) away," that the defendant's site of incarceration exhibited an "infection rate . . . over seven times the infection rate of the [surrounding area]," and that it had failed to fully implement social distancing protocols.  Johnson, 464 F. Supp. 3d at 37 (citations omitted).  The opposite is true in this case: Mr. Morales is vaccinated against COVID-19, none of his more than 1700 fellow inmates is currently positive for the disease, and GWDCF has implemented extensive protocols to mitigate the spread of COVID-19.  These facts outweigh any heightened risk to which Mr. Morales's diabetes and hypertension might expose him.

First, Mr. Morales' vaccination status.  On June 30, 2021, prison officials administered the Johnson and Johnson ("J&J") coronavirus vaccine to Mr. Morales.  See Gov't Opp'n Ex. 6 [ECF No. 310-8].  Twenty-eight days after vaccination, the J&J vaccine is "66% effective in preventing moderate to severe/critical [COVID]" and "85% effective in preventing severe/critical COVID-19."  Janssen Covid-19 Vaccine Frequently Asked Questions, U.S. Food & Drug Admin., https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine-frequently-asked-questions (last updated Oct. 4, 2021); see generally Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last updated Oct. 4, 2021).  This substantial protection against COVID—and especially against life-threatening courses of the disease—seriously undermines Mr. Morales's purported "extraordinary and compelling reason" for release.  See, e.g., United States v. Long, Crim. No. 99-0182 (PLF), 2021 WL 3185600, at *4 (D.D.C. July 28, 2021) ("Because [defendant] is fully vaccinated against COVID-19, however, [his chronic kidney disease and hypertension] do not establish extraordinary

13

and compelling circumstances that would warrant a sentence reduction."); United States v. Hicks, No. CR 93-97-2 (BAH), 2021 WL 1634692, at *6 (D.D.C. Apr. 27, 2021) ("That defendant will soon complete both doses of [a] highly effective vaccine undercuts his claim that he must be released to reduce his risk of infection with COVID-19."); United States v. Shepard, Crim A. No. 07-85 (RDM), 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021) ("[Defendant's] age combined with his other risk factors might otherwise merit his release, but . . . . [g]iven that Shepard [is vaccinated], he cannot show that he needs to be released from prison to protect him from risks associated with COVID-19.").

This is just as true for the Johnson & Johnson vaccine as it is for other vaccines. See, e.g., United States v. Rocha-Carlon, No. 1:14-cr-00227-DAD-BAM-1, 2021 WL 3115229, at *6–7 (E.D. Cal. July 22, 2021) (rejecting argument based on J&J's relative ineffectiveness against the Delta variant and collecting cases denying compassionate release due to having been vaccinated); United States v. Retano, Case No. CR18-105-RSL, 2021 WL 2400867, at *4 (W.D. Wash. June 11, 2021) ("Now that defendant has been vaccinated [with J&J vaccine], his argument regarding future susceptibility to COVID-19 lacks merit."); United States v. Dominguez-Garcia, CR. No. 17-00516 SOM, 2021 WL 2272387, at *4 (D. Haw. June 3, 2021) ("[A]lthough it is possible that Dominguez-Garcia might suffer from a severe case of COVID-19 if infected, his vaccination status makes that unlikely. . . . Dominguez-Garcia's status as fully vaccinated against COVID-19 [with the J&J vaccine] cannot be ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.").[5]

---

[5] The J&J vaccine has also proven effective against the Delta variant, the more transmissible form of coronavirus which is now the dominant cause of COVID-19 in the United States. See, e.g., Apoorva Mandavilli, New Data Suggest J. & J. Vaccine Works Against Delta and Recipients Don't Need a Booster Shot, The New York Times (Aug. 29, 2021), https://www.nytimes.com/2021/08/06/science/johnson-delta-vaccine-booster.html; So You Got The J&J Vaccine? Here's What You Should Know About the Delta Variant, Boosters, and More, Ass'n Am. Med. Colls. (Aug. 18, 2021), https://www.aamc.org/news-insights/so-you-got-jj-vaccine-here-s-what-you-should-know-about-

In addition, COVID-19 infection rates are presently extremely low at GWDCF, where Mr. Morales is currently incarcerated. As of the publication of this opinion, there are no active cases of COVID-19 among inmates at GWDCF (out of 1,742 current inmates), and zero staff members are COVID-positive. See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 5, 2021); CI Giles W. Dalby, Federal Bureau of Prisons, https://www.bop.gov/locations/ci/dal/ (last visited Oct. 5, 2021). Moreover, the vaccination rate at GWDCF far outstrips that of the general American population: "89% of the prison population [at GWDCF] has been fully vaccinated," compared to approximately 56% of Americans and 66% of American adults. See Gov't Opp'n at 6; COVID-19 Vaccinations in the United States, CDC, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (last visited Oct. 5, 2021). And the prison has also implemented extensive sanitation, quarantine, and social distancing protocols. See Gov't Opp'n at 4–5, 15–16; see also Coronavirus – Corrections, Management & Training Corporation (July 27, 2020), https://www.mtctrains.com/coronavirus-corrections/; CDC Protocols for Prisons & Detention Centers, Management & Training Corporation, https://www.mtctrains.com/wp-content/uploads/2020/04/CDC-Protocols-for-Prisons.pdf (last visited Oct. 5, 2021).

In sum, the Court agrees with the government that "the concomitant risks associated with contracting COVID-19 at GWDCF have been rendered negligible." Gov't Opp'n at 14. That conclusion, in combination with his own vaccination, is fatal to Mr. Morales's motion. E.g., United States v. Rice, Crim. A. No. 17-128 (JEB), 2020 WL 6887790, at *3 (D.D.C. Nov. 24, 2020) (denying compassionate release because defendant "fail[ed] to show that there is a non-

---

delta-variant-boosters-and-more. And should new developments call into question the efficacy of the vaccine in protecting Mr. Morales from COVID, he may always file a new request for compassionate release at that time.

speculative likelihood of exposure to the virus" when her site of incarceration had recorded only three positive tests over the course of the pandemic up to that point); United States v. Buckman, Crim. A. No. 14-540-01, 2020 WL 4201509, at *4 (E.D. Pa. July 22, 2020) ("[W]hen prisons can keep the number of positive COVID-19 cases low or even at zero, . . . the risk of exposure is too speculative to render the circumstances extraordinary and compelling."). In light of his vaccination against the coronavirus and the minimal risk of infection at GWDCF, Mr. Morales's somewhat heightened risk of COVID complications due to hypertension and diabetes does not meet the high bar of an "extraordinary and compelling reason" warranting a reduction in his sentence.

Finally, it bears mention that this Court could not order Mr. Morales's immediate release from custody even if it found an "extraordinary and compelling reason" to do so. Mr. Morales is subject to an immigration detainer, meaning that if this Court reduced his sentence pursuant to § 3582(c), he would be transferred to an ICE immigration detention center to await a deportation determination. See Gov't Opp'n Ex. 7. To grant the instant motion would effectively just transfer Mr. Morales from the custody of one federal agency to another and move up his potential deportation date.

To be sure, some courts have granted compassionate release motions for otherwise-deserving defendants subject to an immigration detainer. See, e.g., United States v. Sandoval, No. CR14-5105 BHS, 2021 WL 673566, at *6 (W.D. Wash. Feb. 22, 2021) (collecting cases); United States v. Beras, No. 99-CR-75 (RA), 2020 WL 7496354, at *3 n.4 (S.D.N.Y. Dec. 20, 2020) (same). But in this case, granting Mr. Morales's motion could actually imperil his health, the sole reason he offers in support of his release. Whereas Mr. Morales's current facility is COVID-free, Texas-based ICE detention centers are currently experiencing a spike of COVID-cases, with some

16

facilities tallying case counts in the dozens.[6]  See COVID-19 ICE Detainee Statistics by Facility, ICE, https://www.ice.gov/coronavirus (last visited Oct. 5, 2021).  And hastening Mr. Morales's potential deportation to Guatemala—the practical effect of granting the present motion—would be even worse in terms of COVID exposure: 89% of inmates at GWDCF and 56% of Americans are fully vaccinated, while only 14% of Guatemalans can say the same.  See Coronavirus (COVID-19) Vaccinations, Our World in Data, https://ourworldindata.org/covid-vaccinations?country=GTM (last visited Oct. 5, 2021).

These facts thus bolster the Court's determination that Mr. Morales has not presented an "extraordinary and compelling reason" warranting a sentence reduction.  See, e.g., United States v. Camilo Santos, No. 19-CR-60282-BLOOM, 2021 WL 3726897, at *6 (S.D. Fla. Aug. 20, 2021) ("[E]ven if Defendant were able to demonstrate the existence of extraordinary and compelling circumstances[,] . . . . releasing Defendant into ICE custody would likely be harmful to Defendant's interests in ensuring proper medical care for his medical issues and avoiding exposure to COVID-19."); United States v. Prelaj, No. 16-CR-55-1 (RJS), 2020 WL 3642029, at *3 (S.D.N.Y. July 6, 2020) (denying compassionate release in part because "the Court would likely be increasing [defendant's] chances of contracting COVID-19, since release from his federal sentence would likely result in Prelaj's transfer to a different, and presumably less healthy, immigration facility due to his immigration detainer").

## Conclusion

Because Mr. Morales has not shown an "extraordinary and compelling reason" as required by 18 U.S.C. § 3582(c), it is not necessary to consider the sentencing factors codified at 18 U.S.C.

---

[6] The Court has not received any information as to where exactly Mr. Morales would be detained, but common sense suggests that he would be transferred to a nearby facility.  Even if Mr. Morales would not be detained in a Texas detention facility, this does not change the Court's conclusion.

§ 3553(a): "an inmate may not be granted compassionate release without a finding of an extraordinary and compelling reason, no matter how the § 3553(a) factors shake out." Shabazz II, 2021 WL 4306129, at *6. In light of the foregoing reasons, then, the Court will deny Mr. Morales's motion for compassionate release. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: October 7, 2021